**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

NANCY SANTI,

      Plaintiff,

v.                                                         Case No. 6:18-cv-1574-Orl-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

      Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER[1]**

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff filed her application on October 2, 2014, alleging a disability onset date of January 1, 2006, which was denied initially and on reconsideration. (Tr. 10, 125, 141.) On September 28, 2017, Plaintiff amended her alleged disability onset date to September 23, 2014. (Tr. 189.) On October 4, 2017, a hearing was held before Administrative Law Judge ("ALJ") Louis M. Cantanese at which Plaintiff was represented by counsel. (Tr. 78-109.) On October 31, 2017, ALJ Cantanese found Plaintiff not disabled from September 23, 2014 through the date of the decision.[2] (Tr. 10-23.) Plaintiff is appealing the

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 13.)

[2] Plaintiff had to establish disability on or before December 31, 2019, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 11.)

Commissioner's final decision that she was not disabled during the relevant time period. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. (Tr. 1-3.) The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED**.

   I.   **STANDARD**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ failed to provide good cause for rejecting the opinion of Edgar A. Martorell, M.D., FACR, Plaintiff's rheumatologist. (Doc. 15 at 1.) Second, Plaintiff argues that the ALJ erred in finding that Plaintiff's anxiety and depression were not severe impairments. (*Id.*) Defendant counters that substantial evidence supports the ALJ's assessment of the opinion evidence and Plaintiff's mental impairments. (Doc. 16 at 4-17.) The undersigned agrees with Plaintiff on the first issue, and, therefore, does not address the second issue.

### A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own

3

medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). "However, the ALJ is not required to explicitly address each of those factors. Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam), 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

### B. Relevant Evidence of Record

#### 1. Edgar A. Martorell, M.D., FACR[3]

On August 13, 2017, Dr. Martorell, Plaintiff's rheumatologist, completed a Fibromyalgia Medical Assessment Form. (Tr. 542-46.) Dr. Martorell noted that Plaintiff met the 2010 diagnostic criteria for fibromyalgia as defined by the American College of Rheumatology, that she experienced widespread pain, and exhibited signs of chronic fatigue syndrome. (Tr. 542.) Dr. Martorell indicated that Plaintiff experienced the following symptoms: multi-joint pain without redness or swelling; shortness of breath or breathlessness; post-exertional malaise exceeding 24 hours; diffuse muscle pain; unrefreshing sleep; chronic pain;

---

[3] Dr. Martorell is a board certified rheumatologist and a Fellow of the American College of Rheumatology ("FACR"). (Tr. 642.)

paresthesia; depression/anxiety; and sicca syndrome. (*Id.*)  Dr. Martorell indicated that Plaintiff reported these symptoms began in 2000 or earlier. (*Id.*)  He opined that these symptoms had lasted for at least three months and were related to emotional factors. (Tr. 542-43.)  Dr. Martorell indicated that the severity of Plaintiff's chronic pain and paresthesia varied from mild to severe. (Tr. 543.)  Plaintiff had 18 out of 18 trigger points that were positive for pain upon palpitation. (*Id.*)  Dr. Martorell indicated that all other possible causes for Plaintiff's pain had been ruled out and that Plaintiff was not a malingerer. (Tr. 544.)  He noted that imaging studies revealed osteoarthritis, concurrently in the shoulders, neck, and knees, and a rotator cuff tear. (*Id.*)  Dr. Martorell opined that Plaintiff's condition lasted or was expected to last at least 12 consecutive months. (*Id.*)  He also opined that Plaintiff was likely to be absent from work about two days per month due to her symptoms. (*Id.*)

With respect to side effects from medications that could affect Plaintiff's ability to work, Dr. Martorell listed drowsiness, dizziness, and mental fogginess. (*Id.*)  He also opined that Plaintiff would need to take unscheduled breaks of 5-10 minutes, every 45 minutes to an hour, during an 8-hour workday. (Tr. 545.)  He also opined that Plaintiff could occasionally lift 10 pounds or less, and could rarely carry 20 pounds; could rarely stoop, bend, crouch, crawl, kneel, and climb stairs, but could never climb ladders; and that she could occasionally look down, turn her head left to right, look up, and hold her head in a static position. (*Id.*)  He further stated that Plaintiff had a history of widespread pain for three or more

6

months, had tension headaches, paresthesia, sleep disturbance, and chronic fatigue. (Tr. 546.) Dr. Martorell opined that Plaintiff had the following limitations and abilities: she could only work one hour per day; could only stand for 15 minutes at one time; could not stand more than one hour during an eight-hour workday; could only sit for 15 minutes at one time and for a total of 60 minutes in an eight-hour workday; she could not lift any weight at all during an eight-hour workday; and she could never bend, stoop, or raise her arms over her shoulders. (*Id.*)

### C. The ALJ's Decision

At step two of the five-step sequential evaluation process,[4] the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, bilateral knee osteoarthritis, and sleep apnea. (Tr. 13 (internal citation omitted).) The ALJ found the following conditions to be, at most, non-severe impairments: migraines, high cholesterol, arthritis other than osteoarthritis in her knees, obesity, cervical and thoracic spine degenerative disc disease, bilateral shoulder condition, diabetes mellitus, and hearing loss. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.)

The ALJ then found that, through the date of the decision, Plaintiff had the

---

[4] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

7

Residual Functional Capacity ("RFC") to perform no greater than sedentary work, with the following limitations:

> [Plaintiff] could not climb ladders, ropes, or scaffolds and would be limited to performing all other postural activities on an occasional basis (climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling)[.] [Plaintiff] would also need to avoid concentrated exposure to temperature extremes and also workplace hazards, such as unprotected heights or dangerous machinery.

(Tr. 16.) In making this finding, the ALJ considered, *inter alia*, Plaintiff's subjective complaints and testimony, the objective medical evidence, as well as the opinions of treating, examining, and non-examining sources. (Tr. 16-22.) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of th[e] symptoms [were] not entirely consistent with the medical evidence and other evidence."[5] (Tr. 17.) Specifically, the ALJ noted that Plaintiff's statements about

---

[5] The ALJ noted that Plaintiff initially alleged disability based on fibromyalgia, migraines, arthritis, sleep apnea, neuropathy, and high cholesterol. (Tr. 17.) Plaintiff reported that her migraine and fibromyalgia pain worsened in cold weather. (*Id.*) Plaintiff also reported having "cognitive dysfunction, memory loss, confusion, and concentration problems due to fibromyalgia and possible multiple sclerosis, although the ALJ noted that the evidence did not support a finding of multiple sclerosis as a medically determinable impairment. (*Id.*) The ALJ also noted that Plaintiff prepared meals, cleaned, shopped in stores and online, and sometimes drove. (*Id.*) Plaintiff reported that she felt bad almost all day, but her headaches had improved. (*Id.*) In September 2015, Plaintiff reported "continuous left-side pain from the base of her skull to her left leg". (*Id.*)

The ALJ then summarized Plaintiff's testimony and subjective complaints, in part, as follows:

> The claimant testified she is 5'5" tall and weighs 160 pounds equivalent to a BMI of 26.6, in the "overweight" range. She is right[-]handed. She has a driver's license and drive[s] three to four times per month. She is able to

8

the intensity, persistence, and limiting effects of her symptoms "were inconsistent because the physical examinations . . . showed full range of motion in all extremities, which [was] inconsistent [with] her testimony that she [had] trouble moving her left arm too high or behind her." (*Id.*) The ALJ also pointed out that Plaintiff's memory had "been assessed as being good, contrary to her testimony." (*Id.*) Moreover, the ALJ noted that "Dr. Martorell consistently describe[d] [Plaintiff] as well-appearing (Exhibit 20F) and note[d] that she was continuing to maintain a regular aerobic exercise routine with yoga." (Tr. 17-18.)

In evaluating Plaintiff's impairments, the ALJ assessed the medical evidence, and noted that Plaintiff's "fibromyalgia, bilateral knee osteoarthritis, and sleep apnea [were] reflected in the sedentary exertional level and postural environmental limitations in the above [RFC]." (Tr. 19.) The ALJ also considered the opinions of a number of treating, examining, and non-examining sources.

---

> tend to personal care and some days she cooks and some days she prepares frozen meals. Her family helps her with chores and she wears the same color clothes so she only needs to do one load of laundry. During the day, she sits with her dog in the back yard and watches television, and some days she waters her plants. She goes to church with a friend and does an online Bible study on the computer. She stopped working because she was having problems with her memory and confusion. She testified she is unable to work due to fibromyalgia pain that got worse in 2008. The pain never goes away on the left side of her body. She also has osteoarthritis, primarily in the neck, shoulder[s], hands, and knees. She testified that tramadol makes her dizzy and amitriptyline maker her feel drugged. She uses a CPAP machine due to sleep apnea, Salonpas patches, an electric massager for pain, and when she can afford it, acupuncture. She uses a cane more often now because her leg will give out. She testified she cannot reach too high or to the back with her left hand.

(Tr. 17.)

(Tr. 19-22.) In particular, the ALJ summarized and evaluated the opinions of Dr. Martorell as follows:

> I give no significant weight to the August 2017 opinions in Dr. Martorell's fibromyalgia questionnaire. Exhibit 18F. He wrote that the claimant could work one hour per day, occasionally lift up to 10 pounds, could not bend or stoop, and would have about two absences per month. *Id.* at 3-5. These opinions are entirely inconsistent with Dr. Martorell's recent examination findings from May 2017, the most recent appointment with Dr. Martorell prior to completing the form. *See id.* at 1. In that examination, Dr. Martorell wrote that the claimant was well appearing, fully oriented, ambulating without difficulty, and she had normal shoulder range of motion and normal neck range of motion. Exhibit 20F/1. These findings are not consistent with the extreme restrictions identified by Dr. Martorell.

(Tr. 21.)

The ALJ also gave little weight to "Dr. Martorell's October 2016 note that stated the claimant was unable to perform jury duty due to a chronic medical/physical impairment that significantly affected [her] mobility or ability to remain immobile for prolonged periods." (*Id.*) The ALJ explained that this opinion was "not well[-]supported by Dr. Martorell's records or the medical evidence as a whole[,]" and that "same month, Dr. Martorell noted that the claimant was maintaining an exercise routine with a treadmill and yoga for 30 to 60 minutes." (*Id.*) The ALJ noted that Dr. Martorell "reported she was well appearing, ambulated without difficulty with a cane and had only 'mild' tender points." (*Id.*) Moreover, the ALJ noted that Dr. Martorell had written in January 2017 that there was radiographic evidence that Plaintiff had "generalized osteoarthritis, but no significant restriction of pain related to this at the time." (*Id.*)

10

The ALJ also noted that, "[s]imilarly, Dr. Irfan wrote in July and December 2016 and May 2017 that the claimant had a normal gait." (*Id.*)

In sum, the ALJ concluded that:

> [T]he [RFC] assessment is supported by the overall evidence of record, the opinions of the State agency consultants, and the claimant's ability to perform various activities, including tending to personal care, cooking, doing limited laundry, shopping, and going to church with a friend. Examinations show full range of motion in all extremities. Exhibits 9F; 20F. Dr. Martorell consistently described the claimant as well-appearing (Exhibit 20F), and noted that she was continuing to maintain a regular aerobic exercise routine with a treadmill and yoga. Exhibit 16F. Furthermore, the claimant's memory has been assessed as being good. Exhibits 4F; 17F.
>
> Although the claimant is sometimes reported to use a cane, she also was described as ambulating normally, and there is no indication that this would affect her ability to perform sedentary work. In addition, although the claimant was described by Dr. Martorell as using a cane to ambulate normally in May 2017 (Exhibit 20F/1), one week earlier[,] Dr. Irfan reported she had a normal gait without mention of a cane. Exhibit 19F/3. This suggests that the claimant is capable of walking without a cane.

(Tr. 22-23.) The ALJ also concluded that, despite her limitations, the evidence supported a finding that Plaintiff "would be capable of performing work within the restrictions of the" RFC, and that the ALJ had considered the "waxing and waning nature of fibromyalgia and other issues in evaluating this condition, as described in SSR 12-2p." (*Id.*)

The ALJ then determined that, based on the testimony of the vocational expert ("VE"), Plaintiff was capable of performing past relevant work as a reservation clerk, and that this work did not require Plaintiff to perform work-related activities precluded by the RFC. (Tr. 22.) Thus, the ALJ found that

Plaintiff was not disabled at any time from September 23, 2014, the alleged onset date, through October 31, 2017, the date of the decision. (Tr. 22-23.)

### D. Analysis

The undersigned finds that the ALJ's reasoning for discounting Dr. Martorell's opinions, that they were "entirely inconsistent with Dr. Martorell's recent examination findings from May 2017, the most recent appointment with Dr. Martorell prior to completing the form," was not supported by substantial evidence. The ALJ further noted that "in that examination, Dr. Martorell wrote that the claimant was well[-]appearing, fully oriented, ambulating without difficulty, and she had normal shoulder range of motion and normal neck range of motion" and concluded that "[t]hese findings [were] not consistent with the extreme restrictions identified by Dr. Martorell." (Tr. 21.) According to Plaintiff, the ALJ failed to provide good cause for rejecting Dr. Martorell's opinion and argues that the May 2017 treatment notes were consistent with Dr. Martorell's opinions. The undersigned agrees with these observations.

Here, the objective findings in Dr. Martorell's report dated May 24, 2017, showed, *inter alia*, bilateral tender points, mild tender points on occiput, low cervical, trapezius, supraspinatus, second rib, lateral epicondyle, gluteal, greater trochanter, knee medial fat pad, she had tender upper trapezium trigger, and was using a cane. (Tr. 570.) That same day, Dr. Martorell administered an intra-articular corticosteroid injection into the affected area due to the severity of Plaintiff's pain. (*Id.*)

Moreover, the treatment records also consistently demonstrate severe or moderate pain levels. (*See, e.g.*, Tr. 542-43 (noting mild to severe pain); Tr. 572 (noting, on May 11, 2017, that Plaintiff's pain was severe with a pain score of 7-10/10); Tr. 630 (noting, on August 11, 2015, that Plaintiff's pain was moderate with a score of 4-6/10).) Plaintiff's treatment included analgesics, muscle relaxers, physical therapy, home exercises, acupuncture, and epidural steroid injections. (*See, e.g.*, Tr. 461, 541, 570-71, 574-75, 587; *but see* Tr. 630 (noting, on August 11, 2015, that she could not afford Fibrofit therapy).) Plaintiff experienced little or no more than temporary relief from pain management techniques. (*See, e.g.*, Tr. 570 ("Given the severity of pain that does not improve with the use of physical therapy and traditional analgesics to the patient['s] satisfaction, as well as the cardiovascular, GI and renal risks associated with chronic NSAID's use, we discussed intra-articular corticosteroid injection of the affected site as a reasonable treatment option."); Tr. 575 ("Given the severity of pain that does not improve with the use of physical therapy and traditional analgesics . . . we discussed intra-bursa corticosteroid injection of the affected site as a reasonable treatment option."); Tr. 580 (noting, on January 23, 2017, that Plaintiff reported "not much improvement of pain after receiving [an] intramuscular injection in the left trapezius during the last encounter"); *see also* Tr. 585, 596, 606 (same).)

As a treating physician, Dr. Martorell's opinions were entitled to substantial

weight. *See* 20 C.F.R. § 404.1527; *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Moreover, "the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam). Although Dr. Martorell's opinions appear to support Plaintiff's testimony, the ALJ discounted these medical opinions as inconsistent with Dr. Martorell's own record dated May 24, 2017. However, Dr. Martorell's May 24, 2017 treatment notes, as well as other medical evidence of record, tend to support Dr. Martorell's opinion. *See Meek v. Astrue*, No. 3:08-cv-317-J-HTS, 2008 WL 4328227, at *1 (M.D. Fla. Sept. 17, 2008) ("Although an ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . . Rather, the judge must explain why significant probative evidence has been rejected.") (internal citations omitted); *Lord v. Apfel*, 114 F. Supp. 2d 3, 13 (D.N.H. 2000) (stating that although the Commissioner is not required to refer to every piece of evidence in his decision, the Commissioner may not ignore relevant evidence, particularly when it supports the claimant's position).

The ALJ's conclusion that Dr. Martorell's opinions were inconsistent with his own May 2017 treatment record, or the record as a whole, is not supported by substantial evidence. Additionally, a "hallmark" of fibromyalgia is a lack of objective evidence and, therefore, it is a condition that is "generally diagnosed mostly on an individual's described symptoms." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Court agrees that the ALJ's reasoning for

14

dismissing Dr. Martorell's opinions does not constitute good cause. In the absence of an adequate explanation or reasoning for discounting Dr. Martorell's opinions, it is impossible for the Court "to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (also noting that "when the ALJ fails to state with at least some measure of clarity the grounds for his decision, [the Court] will decline to affirm simply because some rationale might have supported the ALJ's conclusion").

In light of this conclusion and the possible change in the RFC, the Court need not address Plaintiff's remaining arguments. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health and Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam). The ALJ will be directed to reconsider the opinions of Dr. Martorell in light of the record as a whole, state the weight they are accorded, and the reasons therefor.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a) reconsider the opinions of Dr. Martorell, explain what weight his opinions are being accorded, and the reasons therefor; (b) reconsider the RFC assessment, if necessary; and (c) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** in Jacksonville, Florida, on March 31, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

.